**KING et al. v. MOORHEAD, County Judge, et al.**

No. 11924.

Court of Civil Appeals of Texas. Galveston.
July 17, 1947.

Hardway, Harwell, Smith & Gwin, of Houston, for relators.

Knipp, Poston & Broady and Ernest A. Knipp, all of Houston, for respondents.

MONTEITH, Chief Justice.

This action was brought by W. E. King and F.A. Young against respondents, Harris County Flood Control District and the Honorable Ben Moorhead, Judge of the County Court at Law of Harris County, as an original proceeding to compel Judge Moorhead by writ of mandamus to proceed to trial in cause No. 52238, then pending on the docket of the County Court at Law of Harris County, in so far as said cause pertained to the right of Respondent Drainage District to condemn a tract of 3.885 acres of land, a portion of the homestead of Petitioner W. E. King, for a proposed drainage channel. Petitioners alleged that the dredging of the proposed channel would destroy a large number of oak trees, which could never be replaced, and that it would cause irreparable damage to petitioners' entire tract of land. They alleged that Judge Moorhead had denied them the fundamental rights granted them under the constitution of this State by sustaining certain exceptions to their pleadings, wherein they alleged, in substance, that the existing channel and bridge across Hunting Bayou were adequate and that the costs for taking petitioners' property for such purposes were excessive and unnecessary, and that, under the facts, no equitable remedy was available to them.

Respondents in their answer denied that they had sought to evade the making of

proof of all facts necessary to show a right to condemn said property or that the judge of the trial court would waive proof of such essential facts.

Respondent, Harris County Flood Control District, was created by act of the Forty Fifth Legislature, under H. B. 1131, Acts 1937, c. 360, Vernon's Ann.Civ.St. following article 8197f , as a conservation and reclamation district for the accomplishment of the purposes of Section 59 of Article XVI of the Constitution, Vernon's Ann.St. Pursuant to the authority granted under said Act, the governing body of the Flood Control District, the Commissioners' Court of Harris County, adopted plans for the realignment and improvement of Hunting Bayou, to serve an area of approximately twenty square miles. The plans for this improvement, which had been prepared under the supervision of the governing body of Respondent Drainage District, included the construction of a bridge to take the place of an old one which they considered a traffic hazard.

On November 21, 1946, Respondent Drainage District filed its statement in said cause No. 52238 in the County Court at Law of Harris County, seeking condemnation of the alleged required right of way for said drainage channel and bridge. Special commissioners were appointed to assess the damages and an award was made and filed by them on January 31, 1947. On February 6, 1947, Petitioner King filed his objections to said award. On February 12, 1947, Respondent Drainage District tendered into the registry of the court the sum of $7872.50, being double the amount of the damages awarded. By order entered May 19, 1947, the trial court sustained respondents' special exceptions to petitioners' allegations pertaining to the right of Respondent Drainage District to condemn petitioners' property, except as to damages, to which ruling petitioners excepted and from which they seek a writ of mandamus from the court compelling Respondent Judge to proceed to trial in said cause.

■■ It is well settled in this state that a mandamus will not issue to compel the performance of an act which involves the exercise of discretion or judgment, and that the equitable remedy of a writ of mandamus is not available as a substitute for a legal remedy provided by law. Industrial Accident Board of Glenn, et al., 144 Tex. 378, 190 S.W.2d 805.

■ Further, it is well settled that a mandamus will not issue to compel a public officer to perform an official act unless the relator has shown a clear legal right to its performance at the hands of such officer, and that the relator has no further adequate means of redress, and that the officer has clearly violated his duty in not performing the act sought to be required of him. Arcola Sugar Mills et al. v. Houston Lighting & Power Co. et al., Tex.Civ.App., 146 S.W.2d 199 (citing authorities).

Whether petitioners may in a condemnation proceeding control the location and alignment of a drainage channel under the facts reflected by their pleadings has not, so far as we are advised, been passed upon by the courts of this state. However, our courts have, in numerous decisions, held that the determination of the Commissioners' Court or the Highway Commission is final on the question of the location, alignment and nature of improvements.

Further, in the case of Aransas County v. Coleman-Fulton Pasture Company, 108 Tex. 216 191 S.W. 553, 554, the Supreme Court of this state held that "a bridge is ordinarily but the part of a road or highway that crosses a stream. There is, accordingly, ample authority for the proposition that when the term 'roads' is used in statutes, unless from its context it appears to have been used in the specific sense, its generic meaning should be given it, which includes 'bridges' (citing authorities)."

Section 2, Subdivision a, of the Act creating Respondent District expressly authorizes the District to acquire land needed by condemnation, and Section 9 thereof authorizes the District to relocate roads and highways.

In the case of Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160, 163, error refused, which involved a suit by certain citizens and tax payers having a financial interest in the improvement of certain

roads, judgment was rendered in the district court against the county and the commissioners court, enjoining the expenditure of county funds in the improvement of one road and a mandamus was granted requiring an expenditure in the improvement of another. The petition alleged that the action of the commissioners' court in selecting the road for improvement was "inequitable, unjust, and oppressive." There were no allegations that the decision of the commissioners' court was the result of corrupt, fraudulent, malicious or improper motives, or that their decision was not made in good faith. In its opinion the court held that the facts alleged, if true, only showed a bad mistake of judgment and that in cases of this kind the discretionary power conferred upon the commissioners' court could only be interfered with by injunction where the proposed action is fraudulent (citing authorities).

The court held that injunction is proper where there is a gross abuse of discretion but that the abuse of discretion to justify interference with the exercise of discretionary power implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.

In the case of Bobbitt v. Gordon, Tex. Civ.App., 108 S.W.2d 234, 238, the Court of Civil Appeals of this state, in a Per Curiam opinion, said: " 'But it has been held that "the abuse of discretion, to justify interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' * * * We quote the following proposition from Johnson v. Ferguson (Tex.Civ.App.) 55 S.W.(2d) 153, 159, 160, as a correct statement of the law, controlling the exercise by the highway commission of its discretion in locating a public road. 'In matters of judgment touching the commissioners' functions, theirs, and not that of another, is supreme. Certainly their acts other than those of a purely ministerial nature should not be stayed at the hands of the courts, and the important functions of the department thereby impeded or impaired, except upon verified allegations of fact showing unequivocally that they are exceeding the bounds of their legal authority; and as certainly: Their acts "in the exercise of an honest discretion, must be respected when untainted by fraud and unassailed on account of accident or mistake occurring in their performance, or such abuse of discretion as under the authorities would avoid the same." ' "

The following authorities are in accord with the holdings above referred to: Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4; Schiller v. Duncan, Tex.Civ. App., 21 S.W.2d 571; Williams v. Ball, 52 Tex. 603, 36 Am.Rep. 730; Brazos River Conservation & Reclamation District v. Harmon et al., Tex.Civ.App., 178 S.W.2d 281 (error refused); Houston Independent School District v. Reader, Tex.Civ.App., 38 S.W.2d 610.

It is apparent from the facts reflected by the affidavits filed herein, which must be relied upon by this court in determining the issues involved, that petitioners seek by a writ of mandamus to prevent what they deem to be a threatened wrong, including the excavation of a drainage channel, and the destruction of the oak trees complained of. .

In the case of Callaghan, Mayor, et al. v. McGown et al., Tex.Civ.App., 90 S.W. 319, (error refused), the court, in a discussion of the difference in the rules regarding the issuance of the writs of mandamus and injunction, quoting with approval from Merrill on Mandamus, par. 53, held: " 'Mandamus and injunction should not be confounded. The latter is used to prevent action, to maintain affairs in statu quo. The former is complusory commanding something to be done. An injunction is preventive and protective merely, and not restorative. It interposes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be corrective so as to remove it. It is not used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong. * * * Mandamus, however, is complusory, and requires doing an act. It lies to command the doing of what ought to be done, and not to undo what has been done. It does not re-

vise or correct action. It cannot command to abstain from a tort or abuse of office.' "

In this case the ultimate relief sought is the prevention of what petitioners allege to be a threatened wrong for which they seek a review of the rulings of the trial court on special exceptions by writ of mandamus. The relief sought is, in effect, an appeal from the interlocutory order of the trial court sustaining respondents' exceptions to petitioners' pleadings.

It follows, we think, that petitioners are not entitled to a writ of mandamus under the facts alleged, since they have a plain and adequate remedy by appeal and supersedeas or by appeal from an injunction, if one should be granted. Application refused.

Refused.