**Harold COPHER, Appellant,**

v.

**FIRST STATE BANK OF PITTSBURG, TEXAS, Appellee.**

No. 2–92–067–CV.

Court of Appeals of Texas, Fort Worth.

April 28, 1993.

Frank L. Broyles, P.C., Frank L. Broyles and Dane S. Field, Irving, for appellant.

Lane–Ray–Getchell–Wilson, A. Bruce Wilson, Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and LATTIMORE, JJ.

### OPINION

HILL, Chief Justice.

Harold Copher appeals from a turnover order dated January 24, 1992. In that order, the trial court directed that rental income from certain real properties be paid to Copher's judgment creditor, First State Bank of Pittsburg, the appellee, by delivering it to the Bank's attorney of record, A. Bruce Wilson. He presents ten points of error.

We reverse and remand to the trial court for reformation of the order to provide for the designation of a sheriff or constable to whom the property is to be turned over. We affirm the remainder of the order.

Copher's points of error are listed under letters of the alphabet rather than numbers as required by rule 74(d) of the Texas Rules of Appellate Procedure. While for simplicity's sake we shall discuss them in the form they were submitted, we are sure that in the future briefs submitted by counsel will number the points of error as required by the rule.

▮ Copher contends in point of error "a" that the trial judge exceeded the scope of his authority under the Texas turnover statute by ordering him to directly transfer his property to the judgment creditor. We agree with Copher's contention. *See Ex parte Johnson,* 654 S.W.2d 415, 418 (Tex. 1983).

The Bank urges that the decision in *Johnson* is inapplicable here because it concerned turning over tangible personal property, as opposed to the cash involved in the case at bar. In interpreting the language of the authorizing statute, which at that time was TEX.REV.CIV.STAT.ANN. art. 3827a, the Supreme Court held that the statute did not authorize turnovers directly to judgment creditors. *Johnson,* 654 S.W.2d at 418. The Bank is relying on the same language that the creditor relied on in *Johnson.* The statute provided that the court might order the judgment debtor's property "to be turned over to any designated sheriff or constable for execution or otherwise applied towards satisfaction of the Judgment." *Id.* The creditor had argued in *Johnson* that the language "otherwise applied towards satisfaction of the Judgment" meant that the court could order the property to be turned over to the creditor directly. *Id.* As we have noted, the Supreme Court rejected that argument. If that phrase authorizes a direct turnover, as argued by the Bank, it would also have authorized it in *Johnson.*

The statute as it presently appears, TEX. CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986 & Supp.1993), is punctuated in such a way that it would more nearly appear to support the Bank's position than it did as punctuated in article 3827a. However, the Civil Practice and Remedies Code was intended as a recodification only and no substantive change in the law was intended by the Act. Act effective June 15, 1989, 71st Leg., R.S., ch. 1015, § 1, 1989 Tex.Gen.Laws 4112. We sustain point of error "a."

▮ Copher urges in points of error "b," "d," and "e" that A. Bruce Wilson, the attorney for the Bank, is disqualified from being appointed a receiver because: (1) as attorney for the plaintiff, he is an "inter-

ested party"; (2) he has never executed a bond; and (3) he has never taken an oath as a receiver. He urges in point of error "g" that the appointment of a receiver is only permitted if it is conclusively shown that property is in danger of being lost, removed, or materially injured, and that there was no such showing.

In an initial turnover order the trial court ordered that certain sums due to be paid Copher were instead to be paid to Wilson as receiver for the Bank. After Copher filed a motion to vacate the order, a motion that in part complained of Wilson's role as a "receiver," the trial court amended the order to simply reflect that Wilson was to receive the sums of money as the attorney of record for the Bank. Since under the trial court's second order Wilson was not appointed as a receiver, any requirement necessary for the appointment of a receiver would not be applicable. Were it proper for the turnover order to direct the payments be made to the creditor directly, we are aware of no requirement that the creditor's attorney must be designated and qualify as a "receiver" in order to accept those sums on behalf of his or her client. Of course, as we have noted, the trial court may not order that the payments be made directly to the creditor. We overrule points of error "b," "d," "e," and "g."

■ Copher insists in points of error "c" and "j" that there is no evidence to show that the Bank is a judgment creditor of Copher in the amount of $170,000 or a judgment creditor in the amount of $120,000 together with attorney's fees of $5,000.

The trial court found in its original turnover order that the Bank had a valid and subsisting judgment rendered by the District Court of Camp County against Copher in the amount of $170,000 plus $5,000 attorney's fees and an additional amount as interest. In its second turnover order, the trial court found that the Bank had a valid and subsisting judgment against Copher in the amount of $120,000 plus $5,000 as attorney's fees and an additional amount as interest.

In the hearing on the first turnover order, in answer to a question as to whether it was correct that he was one of the judgment defendants in a judgment recovered by the Bank in Camp County District Court for over $170,000, Copher replied, "I am one of the clients (sic), yes, sir." Although Copher slightly misspoke, the trial court reasonably interpreted his answer as being to the effect that he was one of the judgment defendants. Further, Copher did not appeal that turnover order. Consequently, the evidence does reflect that Copher is a judgment debtor of the Bank in an amount in excess of over $170,000. It follows that there is also evidence reflecting that Copher is a judgment debtor of the Bank in an amount in excess of $120,000. We overrule points of error "c" and "j."

■ Copher asserts in point of error "f" that the turnover order must be reversed because Myrna Allmond, an interested party, was never given notice of the turnover hearing. We hold that Copher has no standing here to assert the interests of Myrna Allmond. We overrule point of error "f."

■ Copher insists in points of error "h" and "i" that there is no evidence to support the court's finding that First State Bank of Pittsburg by and through its attorney of record, A. Bruce Wilson, has given an accounting of all payments turned over to the Bank under the turnover order signed March 15, 1991, and that there is no evidence to support the court's finding that all sums received by the Bank have been properly applied in full compliance with the prior court's order.

At the conclusion of the hearing with respect to the second turnover order, the trial court did not make a ruling either granting or denying the accounting pled for by Copher. Copher did not request a ruling on his plea for an accounting. Copher cites no authority for nor makes any argument as to why he is entitled to an accounting. He therefore presents nothing for review. Consequently, any errors that might have been made by the trial court concerning the subject of an accounting are not errors as would amount to such a denial of an appellant's rights as would reason-

ably be calculated to cause or probably cause an improper judgment.

■ The real issue under these two points of error appears to be whether, under the original turnover order, monies received by the Bank's representative from tenants who were paying rents on certain properties should, after the mortgage payments on those properties were made, have been applied to mortgages on properties whose tenants were not paying rent rather than being paid to the Bank towards the satisfaction of its judgment.

It is undisputed that Mr. Wilson, the bank's representative, after making mortgage payments of Copher properties for which he was receiving rental payments from tenants, was forwarding the remainder of the money to the bank in satisfaction of its judgment, rather than making mortgage payments on Copher properties for which the tenant was making no rental payments.

Under the terms of the original turnover order, dated March 15, 1991, Wilson was to receive rental payments from tenants on certain properties. Out of those payments, Wilson was to first pay any and all mortgage payments due and owing "on the property," and any ad valorem taxes assessed "against the property," and deliver any surplus funds to the Bank. This is exactly what Wilson did. We do not agree with Copher's construction of the order to the effect that Wilson was required to apply the rentals from one property toward the mortgage on properties where the tenant was not paying rent. Had that been the intention, we believe that the plural term "properties" would have been used in the order rather than the singular. We overrule points of error "h" and "i."

We reverse and remand so that the trial court might reform the order dated January 24, 1992, to designate a sheriff or constable to whom the payments are to be turned over. We affirm the remainder of the order.