# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


## NO. 02-09-00449-CV

PREMIER TRAILER LEASING, INC. APPELLANT

V.

GTR RENTAL L.L.C. F/K/A APPELLEE
CITICAPITAL TRAILER RENTAL,
INC.

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Premier Trailer Leasing, Inc. appeals the trial court's turnover order. In four issues, Premier contends that the trial court erred by entering a turnover order against it because it is a non-judgment debtor; that the turnover order violates terms of Premier's stockholders agreement; that the trial court

---

[1]*See* Tex. R. App. P. 47.4.

erred by issuing an order requiring Premier to disclose what it considers to be trade secrets; and that the turnover order fails to set forth Premier's duties clearly and definitively. We modify the turnover order and will affirm it as modified.

In July 2007, a South Carolina federal court granted judgment in favor of Appellee GTR Rental, LLC f/k/a CitiCapital Trailer Rental, Inc. against John DalCanton. GTR domesticated the judgment in Denton County. DalCanton owns one hundred shares of common stock and one hundred shares of preferred stock in Premier. On November 17, 2009, the trial court reconsidered its prior turnover order dated June 7, 2009, and entered a new turnover order requiring Premier to "pay or distribute to GTR . . . all [c]ompany [d]istributions to which DalCanton may be otherwise entitled." Premier now appeals the latest turnover order.

## II. THE TURNOVER ORDER AGAINST PREMIER, A NON-JUDGMENT CREDITOR

In its first issue, Premier contends that the trial court erred by entering the new turnover order against it on the judgment against DalCanton. Specifically, Premier contends that because it is a non-judgment debtor, it "should have never been subjected to a turnover order."

We review turnover orders under an abuse of discretion. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 321 (Tex. App.—Dallas 1997, writ denied). We reverse only if the trial court acted in an unreasonable or

arbitrary manner. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

The turnover statute is a purely procedural device by which creditors may reach a debtor's nonexempt assets that are otherwise difficult to attach or levy on by ordinary legal process. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (Vernon 2008); *Burns*, 948 S.W.2d at 321. Under the statute, a judgment creditor can apply to a court for an injunction or other means to satisfy a judgment through a judgment debtor's property, including present or *future* property rights. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a).

Property may be subject to a turnover order if the judgment debtor owns the property; the property is property a creditor cannot readily attach or levy on by ordinary legal process; and the property is not exempt from attachment, execution, or seizure for the satisfaction of the liabilities. *Id.* And as this court has previously held, when a third party holds property subject to a debtor's possession or control, the trial court may issue and enforce a turnover order against the third party. *Dale v. Fin. Am. Corp.*, 929 S.W.2d 495, 498 (Tex. App.—Fort Worth 1996, writ denied).

Here, DalCanton, as a shareholder of Premier, possesses future rights to distributions through his stock ownership. GTR is utilizing the turnover statute to pursue these future distributions intended for DalCanton. And neither party disputes that Premier is a non-judgment creditor. The turnover statute

3

specifically allows that it may be utilized to reach "present or future rights" to property. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). Furthermore, this court has held that a trial court may issue and enforce a turnover order against a third party when that party holds property subject to the debtor's possession or control. *Dale*, 929 S.W.2d at 498. We conclude and hold that the trial court did not abuse its discretion by entering a turnover order against Premier, a non-judgment creditor, requiring that if it is to make distributions to DalCanton based on his ownership of Premier stock, Premier must turn over these amounts to GTR. We overrule Premier's first issue.

### III. PARAGRAPH SIX OF THE TURNOVER ORDER

In its fourth issue, Premier contends that the turnover order lacks the requisite clarity and definiteness required of a turnover order, which, as Premier points out, acts as a mandatory injunction.

A turnover order does act as a mandatory injunction. *Schultz v. Fifth Judicial Dist. Ct. of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991), (holding turnover order in nature of mandatory injunction is immediately appealable), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004); *Int'l Paper Co. v. Garza*, 872 S.W.2d 18, 19 (Tex. App.—Corpus Christi 1994, orig. proceeding) (turnover order acts as a mandatory injunction against the judgment debtor and, if there are such parties, against the receiver and any third parties interested in the property rights being adjudicated). To this end, orders

4

granting injunctions must be specific and describe in reasonable detail the act sought to be restrained. *See* Tex. R. Civ. P. 683. That is, there can be no doubt about the conduct required to comply with the order, nor can there be any doubt about the conduct that would be a failure to comply with the order. *See Vaughn v. Drennon*, 202 S.W.3d 308, 316 (Tex. App.—Tyler 2006, no pet.) (holding that an injunction must be definite, clear, and concise, leaving the person enjoined in no doubt about his duties, without calling on him for inferences or conclusions about which persons might differ) (citing *Gulf Oil Corp. v. Walton*, 317 S.W.2d 260, 264 (Tex. Civ. App.—El Paso 1958, no writ)).

In this case, paragraph six of the turnover order states:

> In order that GTR may ascertain whether DalCanton and, by virtue of this Order, GTR may be entitled to a distribution from [Premier], [Premier] shall provide to GTR all notices related to [Premier] distributions and any financial information, to which DalCanton is entitled as a stockholder of [Premier] in the same fashion as DalCanton is entitled (except that GTR is not entitled to marketing materials, price lists, customer lists, customer identities, and product identities and availabilities); provided, further, that all such information and notices shall remain subject to the Confidentiality Order.

Premier's argument is that the language of "any financial information" until the end of paragraph six lacks clarity and definiteness as to what its duties are under this provision of the order. Premier claims that the trial court itself, during the turnover order hearing and in its findings of facts and conclusions of law, demonstrated the ambiguous nature of this provision. At the hearing, the trial court commented that "[i]t is the intent that [GTR] get financial information of a

5

general nature, such as you would disclose to your auditors . . . Or not disclose to your auditors, they may get confidential information, such as the financial statements the auditors would get . . . [l]ike you would disclose to your bank. Let's give it that idea." The trial court found as a matter of law that "Confidential trade secret information is not subject to discovery by GTR but financial statements given to third party lenders such as Bank of America is discoverable." What if Premier turns over financial information to a bank that is also confidential information? The complained of provision in paragraph six of the turnover order does not clearly dictate what Premier is to do in that instance.

Additionally, we conclude that the provision further lacks clarity in the qualifying nature that is also built into the provision. The provision states that Premier is to turn over "any financial information," but qualifies that this information is not to include "marketing materials, price lists, customer lists, customer identities, and product identities and availabilities." Premier could infer from this provision that it is not required to hand over any financial documents that it deems similar to "marketing materials, price lists, customer lists, customer identities, and product identities and availabilities" because only these five enumerated exceptions to "any financial information" are listed in the order. Or, because the provision does not clearly dictate otherwise, Premier might conclude that it *is* required to provide to GTR *any* financial information—no matter how similar to "marketing materials, price lists, customer lists, customer identities, and

6

product identities and availabilities" it might be—even if it is something that it might only provide to auditors but not a lending institution or that it might consider confidential financial information. This is the exact lack of clarity that a turnover order cannot contain. In short, this language leaves doubt about the conduct required by Premier to comply with the order, and it further leaves doubt about the conduct that would be a failure by Premier to comply with the order. We conclude that this language is not definite, clear, and concise, and that it leaves Premier with doubt about its duties and calls on Premier to make inferences or conclusions about which persons might differ. *Gulf Oil Corp.*, 317 S.W.2d at 264. Thus, we hold that the trial court erred by including the language

> "and any financial information, to which DalCanton is entitled as a stockholder of [Premier] in the same fashion as DalCanton is entitled (except that GTR is not entitled to marketing materials, price lists, customer lists, customer identities, and product identities and availabilities); provided, further, that all such information and notices shall remain subject to the Confidentiality Order."

We sustain Premier's fourth issue and modify paragraph six of the turnover order entitled "Order On Motion for Reconsideration" to read only "In order that GTR may ascertain whether DalCanton and, by virtue of this Order, GTR may be entitled to a distribution from the Company, the Company shall provide to GTR all notices related to Company distributions." *See* Tex. R. App. P. 43.2(b) ("The court of appeals may . . . modify the trial court's judgment and affirm it as modified.")

7

## IV. CONCLUSION

Having overruled Premier's first issue and sustained its fourth issue, we need not address Premier's second and third issues because they are predicated on the language we have removed from the turnover order. We modify paragraph six of the turnover order entitled "Order on Modification for Reconsideration" to read only "In order that GTR may ascertain whether DalCanton and, by virtue of this Order, GTR may be entitled to a distribution from the Company, the Company shall provide to GTR all notices related to Company distributions." We affirm the trial court's judgment as modified.


BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: May 19, 2011

8